SIDNEY BLANCHARD, ADMINISTRATOR, ETC., ET AL.

v.

SYLVESTER M. CHAPMAN.

*Wills—Construction—General Rule—Intention—Implied Trusts—Precatory Words—Excessive Allowance—Evidence.*

1. The general rule applicable in the construction of wills is, that the intention of the testator as expressed in the will construed as a whole must govern and prevail.

2. When property is given absolutely to any person, and the same person is by the giver, who has power to command, recommended or entreated or wished to dispose of the property in favor of another, the recommendation, entreaty or wish shall be held to create a trust, if the words so used as a whole ought to be construed as imperative; if the subject of the recommendation or wish be certain; and if the persons intended to have the benefit of the recommendation or wish be also certain.

3. In the case presented, it is *held:* That an implied trust is raised by words to the effect that the testator relied on his wife to make all needful provisions for the future wants of his brother; and that the complainant is entitled under the evidence to an allowance of $1,000 per year, only from the commencement of this suit.

[Opinion filed January 22, 1887.]

APPEAL from the Circuit Court of La Salle County; the Hon. GEORGE W. STIPP, Judge, presiding.

· Statement by LACEY, J.   Henry B. Chapman died testate June 6, 1881, and bequeathed by his will, among other things, $1,000 to the appellee, who was his brother, to be paid to him at the testator's decease, and further made this provision: "And having and reposing implicit confidence in the goodness and kindness of my dear wife I rely upon her to make —— and all needful provision for the future wants of my brother Sylvester."

His wife, Esther S. Chapman, was made the residuary legatee and also executrix.   At the death of Henry B. his estate was worth about $70,000.

The will was duly probated and his wife appointed execu-

Blanchard v. Chapman.

trix, June 27, 1881. She paid $700 of the specific legacy to appellee, and gave him a note belonging to the estate for $300, which he accepted for the balance, which is claimed to be now uncollectible. This was all the money or property that she ever paid him, and she made no provision for his support, except as will be seen hereafter in her will.

On the 12th day of April, 1885, said Esther died testate, leaving no children as heirs, and bequeathed all her property then consisting of about $66,000, as follows: $300 to her sister; $12,000 to her own blood relations and friends; $3,000 to churches and cemeteries; $6,000 to the Old Ladies Home of Chicago; and the residue, consisting of about $40,000 except the provision for Sylvester hereafter mentioned, to the "worthy poor" of the city of La Salle.

The provision made by her in the will for appellee was that $5,000 should be put at interest at not less than six per cent., and that the income annually should be paid to Sylvester; provided that if appellee, as the result of any litigation or circumstances whatever, should receive anything from any portion of the property left to her by her husband otherwise than from her, then he was to receive nothing under the will. The appellants became the administrator and the executors; respectively, of the estates of the said Henry B. and Esther Chapman, deceased.

The appellee filed the bill herein, asking that the will of Henry B. Chapman be construed and the clause in it made for the benefit of him be held to be peremptory on the said Esther to make the needed provision for his future wants, and that the will be held not to leave it a discretionary matter with her to do so or not at her option. The bill also shows that the provision made by her in her will for appellee was not sufficient for his needed support.

Answer was filed, evidence taken, and the cause heard in the Circuit Court. The court sustained the construction of the will contended for by the appellee, and found the provision in Mrs. Chapman's will insufficient and granted him relief as follows: $4,142.26, being at the rate of $1,000 per annum from one

year after the death of said Henry B., to wit, from June 6, 1882, till the date of the hearing July 27, 1886, which sum was to be paid immediately; and then decreed that the said executors of the estate of Esther pay to appellee at the rate of $1,000 per annum, quarterly $250, during his life.

This suit was commenced August 18, 1885. Up to that time, so far as the proof shows, the appellee had never made any demands on the said Esther during her life, nor on the executors after her death, till about the time this bill was filed, for any support, but managed to get along on his own resources.

Messrs. MAYO & WIDMER, for appellants.

The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his will shall prevail, provided it be consistent with the rules of law. Smith v. Bell, 6 Pet. 75; People v. Jennings, 44 Ill. 488; Mason v. Ely, 38 Ill. 138; Blanchard v. Maynard, 103 Ill. 60.

The intention should be gathered from the whole will; all its words and provisions should be considered, and no part, if possible, left inoperative. Willis v. Watson, 4 Scam. 64; Mason v. Ely, 38 Ill. 138; Brownfield v. Wilson, 78 Ill. 467; Hamlin v. U. S. Express Co., 107 Ill. 443.

Was it then the intention of the testator here, as declared by the court below, to bequeath to the complainant, in addition to the sum of $1,000, "*such other and further sums of money* as would be proper and necessary to make any and all needful provisions for the future wants of complainant,"—and did the testator intend to impose upon his estate a trust for such purpose?

The words, "to make (    ) and all needful provisions for the future wants" of another, are not only indefinite as to the *quantum* of the supposed gift over, but there is also uncertainty as to the property to be devoted to such purpose, an uncertainty which prevents the creation of a trust, even when the words of the will are imperative (Mills v. Newberry, 112 Ill. 123), and as to the mode in which the provisions may be

made; and when, as here, the testator accompanies such language by the expression of his implicit confidence in the goodness and kindness of his donee, it seems to us clear he intended to leave the subject, both as to *quantum* and mode, to her discretion.

If, upon a fair construction of the whole will, there appears to be an absolute gift to the first taker, a trust will not be imposed upon such gift by expressions of doubtful or uncertain meaning. The general intent clearly expressed must govern, and the gift will not be cut down by such expressions. Barrett v. Marsh, 126 Mass. 213; Huskisson v. Bridge, 4 De G. & Sm. 245; Hay v. Master, 6 Sim. 568; Meredith v. Heneage, 1 Sim. 543; Knott v. Cottee, 2 Phil. 192; Webb v. Woods, 2 Sim. 267; Van Duyne v. Van Duyne, 1 McCarter, 197; Ellis v. Ellis, 15 Ala. 296; Rhett v. Mason, 18 Gratt. 541.

The testator here expressly declared that by the residuary clause of his will his real estate " is entirely devised " to his wife. If so, it was given to her completely, perfectly, not wanting or defective in any particular, and such gift is inconsistent with the idea that he intended to create any interest in or charge upon the same in favor of any other person. Then, as if to make his meaning still plainer, and to give his construction to the whole will, he declared his " intention being to make my said wife the residuary legatee of all my estate as aforesaid, after the payment of said funeral expenses, debts and legacy to brother Sylvester, and the devise of said cemetery lot to said Herman Baldwin."

Messrs. DUNCAN & O'CONOR, N. W. CUMMINGS and H. T. GILBERT, for appellee.

The question, and the only question, to be determined in a case of this kind is, not why imperative language was not used by the testator, but it is, what is the intention of the testator as manifested by the language actually used ?

In this case there can, however, be a very satisfactory reason given why the testator used the form of expression contained in the will. The $1,000 given to Sylvester was intended to

Blanchard v. Chapman.

supply his present wants and necessities. What his future wants might be could by no possibility be prejudged or foreseen. Being already past three score and ten and in feeble health, his end might come before additional assistance would be necessary. Should he live for a longer period, the amount necessary to supply his wants would depend upon a variety of circumstances which likewise could not be foreseen.

It is clear beyond all doubt that the testator intended that Sylvester should be cared for according to his wants, and that he should have no more than is wants required; and it is likewise clear that he intended his wife should have the full enjoyment of his estate, diminished only by such amounts as should be necessary, from time to time, to properly care for his brother.

"If a testator make an absolute gift to one person in his will, and accompany the gift with words expressing a ' belief,' ' desire,' ' will,' ' request,' ' will and desire;' or, if he ' will and declare,' ' wish and request,' ' wish and desire,' ' entreat,' ' most heartily beseech,' ' order and direct,' ' authorize and empower,' ' recommend,' ' hope,' ' do not doubt,' ' be well assured,' ' confide,' ' have the fullest confidence,' ' trust and confide,' ' have full assurance and confident hope,' or, if he make the gift, ' under the firm conviction,' or ' well knowing,' or, if he use the expressions, ' of course the legatee will give,' or, ' in consideration that the legatee has promised to give',—in these and similar cases, courts of equity consider the intention of the testator as manifestly implied, and they will carry the intention into effect by declaring the donee or first taker to be a trustee for those whom the donor intended to benefit." Perry on Trusts, Sec. 112. See also Knight v. Knight, 3 Beav. 172; Knox v. Knox, 59 Wis. 172, (48 Am. R. 487,) a leading case upon the subject of precatory trusts; Warner v. Bates, 98 Mass. 294; Lucas v. Lockhart, 10 Smedes & M. 466, (48 Am. Dec. 766); Harrison v. Harrison, 2 Grattan, 1 (44 Am. Dec. 365.)

When a bequest is for the maintenance, support and education of an infant, or for the maintenance of an adult, although no amount be specified, the court will determine the

amount to be applied for that purpose. 1 Jarman on Wills, 649; Broad v. Beran, 1 Russ. 511; Pride v. Fooks, 2 Beav. 430; Kilvington v. Gray, 10 Sim. 293. This must necessarily be the law, for otherwise no trust could be created by a last will and testament for the maintenance or support of any person, unless the testator could foresee the exact amount necessary in such a case.

LACEY, J. The first question to be decided is as to the proper construction to be given to the clause in the will of Henry B. Chapman, deceased, made for the future support of the appellee. Was it a direction, or did it leave the matter to the arbitrary discretion of his wife, the executrix appointed in the will? We are of the opinion that the court below gave the proper construction of the clause in question.

It was undoubtedly the desire of the testator that his brother, who was a poor man and becoming quite old and helpless, he then being near seventy years of age, should have a decent and comfortable support out of his large estate. Henry B. Chapman appears to have been benevolent and kind toward his brother and to have for some time aided and assisted him pecuniarily to make a support for himself and family.

It could not have been the intention of the testator to cut off his brother from a comfortable support, or to have him restricted to an insignificant sum per annum, and the balance given by his wife at her death to the "worthy poor" of the city of La Salle and other indifferent persons and objects. We can not but think that his wish and desire have been disregarded and his benevolent intentions toward his bro her thwarted by the will of his wife if that be carried out.

The general rule of construing wills is that the intention of the testator as expressed in the will, construed as a whole, must govern and prevail. The language in this will is quite strong: "I rely on her (his wife) to make all needful provisions for the future wants of my brother, Sylvester."

If he relied upon her to do this it was certainly his will that it should be done, not that it should be wholly or in part omitted.

Blanchard v. Chapman.

If the testator had not had confidence in the goodness and kindness of his wife as he recites he had, he would not have intrusted the matter to her at all, but would have chosen another in whom he did have confidence to carry out his will and good intention toward his brother, who was old and poor, while the testator was wealthy and had good feeling toward him. He believed in the goodness and kindness of heart of his wife, and for that reason believed that she of all others would carry out his intentions in letter and spirit; therefore she was intrusted with the full title to all his property and with the trust.

The testator wants the trust executed in behalf of his brother, and he *relies* upon her as the trusty instrument to carry out his will. The will does not provide that the future wants of his brother may be supplied or not at her option, but she is relied upon to do the acts desired. The language will not bear the construction contended for by appellants that the will left it a matter of discretion with his wife.

The general rule of law in construing such clauses in wills as to whether they are precatory or absolute is, that, " when property is given absolutely to any person and the same person is, by the giver who has power to command, recommended, entreated or wished to dispose of the property in favor of another, the recommendation, entreaty or wish, shall be held to create a trust, if the words so used as a whole ought to be construed as imperative, if the subject of the recommendation or wish be certain, and if the persons intended to have the benefit of the recommendation or wish be also certain." Knight v. Knight, 3 Beav. 172 ; Perry on Trusts, Sec. 112; Knox v. Knox, 59 Wis. 172 (48 Am. Rep. 487).

All these elements seem to combine in the present case. As to this assignment of error we hold that no error was committed by the court below

As to the amount that was allowed it is objected that it was excessive. We have examined the evidence carefully and are of the opinion that $1,000 per annum, considering the amount and value of the estate, is not an excessive allowance for the necessary and reasonable wants of the appellee and that the

amount provided for by Mrs. Chapman was inadequate. But, as we read the will, no support was due the appellee unless he really needed it.

The will does not provide that he should be paid a sum equal to his wants whether he needed it or not for his actual support. He might have means of his own or be able to make his own living. He might never call for any support and might manage to pay his own way and in case he did so the estate would not be his debtor at all. It appears from the evidence that appellee had the legacy of $1,000 his brother left him and some property of his own, and that he never called on Esther S. Chapman for any support during her life nor of her executors after her death, till about the time this bill was filed. And it does not appear from the evidence that appellee had incurred any indebtedness on account of his living that was unpaid at the time this suit was commenced. We can not see under what principle of law he could recover at the rate of $1,000 per annum from one year after his brother's death to the time the suit was commenced. The commencement of the suit may be regarded as a demand for support and he reasonably might be allowed from that time to the date of the trial and from that date forward; but not prior to that under the evidence. For the reason that the court below allowed appellee the sum of $3,208.66 from June 6, 1882, to August 18, 1885, the date when the suit was commenced, that much of the said decree is reversed, and the balance of the amount due and decreed of $933.60, and the decree for the quarterly payments of $250 after the date of the decree, July 27, 1886, and in all other respects, is affirmed, and the costs of this court is awarded against the executors of Mrs. Chapman, deceased.

*Decree affirmed in part and reversed in part.*