JOHN A. DICKISON ET AL.

v.

DANIEL S. DICKISON ET AL.

*Wills—Construction.*

1. Children to whom a testator in one clause of his will bequeaths property, " to be in full of their portion of my estate, both real and personal," take nothing under the residuary clause, directing the residue of his estate to be equally divided between " my children."

2. Where a testator in specific bequests to his illegitimate children speaks of them each as " my son," or " my daughter," and also speaks of their mother as " my wife," they will share with the legitimate children in the residuary clause, which directs the residue of his estate to be equally divided between " my children."

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Peoria County; the Hon. T. M. SHAW, Judge, presiding.

Messrs. McCULLOCH & McCULLOCH, for appellant, John A. Dickison.

Mr. GEO. B. FOSTER, for appellees.

Mr. ARTHUR KEITHLEY, for Wm. B. Dickison, executor.

UPTON, P. J. On the 9th of April, 1874, the testator, Griffith Dickison, then a resident of Peoria County, made his last will and testament in substance as follows:

First clause providing for payment of debts.

Second. To my son, William B. Dickison, I will certain real estate in fee, describing by government subdivisions.

Third. To my son, Griffith A. Dickison, certain other real estate in fee (describing it).

Fourth. To my wife, Sarah A. Dickison, I will, devise and bequeath the west half of the northeast quarter, etc., during her natural life. At her death to descend to and become the property of my two children, Mary and Estella Dickison, in fee.

Fifth. To my daughter, Fanny Dickison, certain other realty in fee (particularly describing it).

Sixth. To my son, Daniel S. Dickison, certain other real estate in fee (describing it).

Seventh. To my son, Joseph R. Dickison, certain other realty in fee (describing it).

Eighth. To my daughter, Roxie J. Hitchcock, certain other realty in fee (describing it).

Ninth. To my children, John Abraham and Mary Ann, I will, devise and bequeath the west half of the northwest quarter of section twenty-seven in township ten north, range seven east, in equal shares, to be in full of their portions of my estate, both real and personal, to be theirs, their heirs and assigns forever.

Tenth. To my son, Griffith A. (a specific devise).

Eleventh. All the rest of the real estate of which I may die possessed, shall be by my executor sold, also all the personal property I may have at my death shall be sold, and from the proceeds of such sales he shall first pay all my just debts, etc.; the remainder he shall divide amongst my heirs as follows: To my wife, Sarah A. Dickison, one-third part thereof, and the remainder to my children in equal portions, share and share alike, to be theirs, their heirs and assigns forever, absolute.

Twelfth. I appoint my son, Wm. B. Dickison, executor.

Dated April 9, 1874. (Signed and witnessed.)

To which was attached by the testator on the 7th day of March, 1882, the following codicil executed in due form of law, in substance, as follows:

Whereas, I, Griffith Dickison, did, on the 9th day of April, 1874, make my last will and testament, in and by which will I made devises to all my children then born, and whereas, since that date a son has been born to me whom I have named

Fred, I make this a codicil to my said will to have the same force and effect as if it was a part of my original will. That is to say, I will, devise and bequeath to my son, Fred, certain realty in fee, and to my daughter, Roxie Jane Hitchcock, certain realty in fee, describing it.

Dated March 7, 1882. (Signed and witnessed.)

The testator died in Peoria county on or about March 14, 1886, and shortly after his death, his will, with annexed codicil, was duly admitted to probate in Peoria County Court in due form of law, and William B. Dickison, named therein as executor, was duly qualified and acted as such, to whose appointment or acts therein no question is here made.

On the 5th of January, 1889, the executor, Wm. B. Dickison, filed in the County Court of Peoria County his final report as such executor, showing in his hands after payment of all claims against the estate and costs of administration, the sum of $9,214.05, for distribution in accordance with the provisions of the above recited will of Griffith Dickison, deceased.

It seems uncontroverted as the fact in this case, that Griffith Dickison, the testator, in his lifetime had by his first wife three children, and by his second wife two children, making five legitimate children. The testator was divorced from his second wife, but before the divorce was obtained the two persons named in his will as "my son Daniel S. Dickison, and my daughter Fanny Dickison," were born to him by another woman whom he designated in his will as "my wife, Sarah A. Dickison," and by whom he also afterward had born to him four other children, making six of this latter branch, which are called in the argument before us, illegitimate, the testator never having been formally married to the said "Sarah A.," their mother, or if married, such marriage is not shown by the evidence.

After the death of the testator, and some time prior to the filing of the report of the executor in this proceeding, "Sarah A. Dickison" died, thus leaving the eleven children of the three branches above named, her surviving.

On the hearing as to the distribution of the reported assets in the County Court, it was insisted and contended that under

the ninth paragraph of the will John A. and Mary Ann Dickison had received in real estate their and each of their full shares and portions of said estate, and should not be entitled to receive anything under the residuary clause of the will. This objection was sustained by the County Court and they were denied the right to share as distributees in said sum of $9,214.05. It was also further objected and contended in the County Court that Fanny M., Daniel S., Joseph R., Estella G., Mary and Fred Dickison should be excluded from, and not be permitted to share in the distribution of said sum under the residuary clause of said will, for the reason assigned, that they were the children of said testator and the said Sarah A. Dickison named by the testator in his will as his wife; that the testator and Sarah A. Dickison were never married and that the said children were therefore incapable of taking under the eleventh or residuary clause of the will. The court overruled the last objection and ordered and directed the executor to make distribution of said sum in equal parts between the children of all branches, those called legitimate as well as those designated as illegitimate, being nine in number, as distributees, excepting John A. and Mary Ann Dickison, who were excluded as before stated, as having received their full share and portion of the estate under the ninth clause of the will; exceptions were taken to the decision, order and direction of the County Court, and appeal prayed to the Circuit Court by William B. and John A. Dickison, and the appeal was heard in the Circuit Court, and the judgment, order and decree of the County Court therein was fully and in all things affirmed, and appellants, excepting to the judgment of the Circuit Court, the case was further appealed to this court, and upon the record presenting the before mentioned facts, two questions arise for our determination.

First. Is appellant, John A. Dickison, entitled to share in the sum to be distributed under the eleventh or residuary clause of the will, notwithstanding the provisions of the ninth clause thereof?

Second. Are the appellees, the six so-called natural children of testator, viz., Fanny M., Daniel S., Joseph R., Estella

G., Mary and Fred Dickison, entitled to share as distributees under said residuary clause in the testator's will?

The rules of law governing the construction of wills are so plain and well known as to require no extended citation of authorities upon that subject.

The object in construing a will is, first, to ascertain and give effect to the intention of the testator, that it may be enforced in the sense in which he understood it.   The intention of the testator expressed, taken as a whole, must govern in its construction.   Hence, the question of first importance in every case of the construction of a will is, what was the intention of the testator? and when that is ascertained, effect is to be given thereto accordingly; and it is the duty of the court, in the absence of latent ambiguity, to gather that intention from the will alone, giving effect to all words, without rejecting or controlling any of them, if it can be done by a reasonable construction not inconsistent with the manifest intention of the testator.   Blanchard v. Chapman, 22 Ill. App. 341; Taubenhau v. Dunz, 125 Ill. R. 529, and authorities there cited; Caruthers v. McNeill, 97 Ill. 256; Kennedy v. Kennedy et al., 105 Ill. 350.

In the last above cited case it was held, not only that the principal inquiry in the construction of a will was the intention of the testator to be gathered from the will itself, but, when that intention satisfactorily appears, it must prevail over any artificial rules of construction.

Applying these principles, which are undisputed, to the questions presented by the record before us, we think them not difficult of solution.

First.   As to the right of John A. and Mary Ann Dickison to participate in the distribution of the $9,214.05 under and by virtue of the residuary clause of the will.   The 9th clause of the will in controversy is as follows:

" To my children, John Abraham and Mary Ann, I will, devise and bequeath the west half of the northwest quarter of section 27, township 10 north, range 7 east, in equal shares, *to be in full of their portions of my estate, both real and personal*, to be theirs, their heirs and assigns, forever."

It would be difficult, we think, to misapprehend the intent of the testator from the language used in this .clause. To hold that they, or either of them, were entitled to participate in the distribution of his estate, real or personal, under the residuary clause in that will, would of necessity be to nullify and render wholly inoperative the plain intent and meaning of the 9th clause thereof, as it seems to us.

In our judgment, the Circuit Court did not err in so holding.

Second. Are the appellees, the six so-called natural children of the testator, who are claimed as illegitimate, entitled to share as distributees under the residuary clause of the will.

There can be no question but that each and all of the children of the testator, legitimate or otherwise—named as such in the will, are entitled to take under the residuary clause thereof, if it was the intention of their father that they should so take, and in determining that question it is always proper to examine each provision of the will that has any bearing on the point in dispute, and construe them together.

In the view we have taken of the case at bar, we are not called upon to determine what would have been the rights of the children of the testator denominated "illegitimate" under the term " my children " in this residuary clause, if it were standing alone, unaided by other parts of the will, or whether the term " my children " should be held to mean legitimate children only, or primarily as claimed by the appellant.

We think it manifest from the other portions of the will in the case at bar, who the testator intended by the general term "my children " in the residuary clause thereof. In the second clause we find this language; " To my son, William B. Dickison," in the third clause, " To my son, Griffith A. Dickison," in the fourth clause, " To my wife, Sarah A. Dickison * * * during her natural life, at her death to descend to and become the property of my two children, Mary and Estella G. Dickison." The fifth clause devises " To my daughter, Fanny May Dickison," the sixth clause devises " To my son Daniel S. Dickison," the seventh clause devises "To my son, Joseph R. Dickison," the eighth clause devises " To my daughter, Roxie

J. Hitchcock," the ninth clause devises "To my children, John Abraham and Mary Ann Dickison," the tenth, a second devise "To my son Griffith A.," the eleventh, the residuary clause, devises "To my wife, Sarah A. Dickison, one-third part," etc., "and the remainder to my children in equal portions share and share alike," etc., and by the codicil, "To my son Fred," etc. Each and every one of the eleven children are especially named, and each and every one are called by the testator "my son," "my daughter," or "my children," and the mother of these so-called illegitimate children is twice named in the will as "my wife, Sarah A. Dickison."

Thus manifestly the intention of the testator was, as we think, to include by the words "my children" as used in the residuary clause, those called legitimate, as well as those denominated illegitimate, by appellant's counsel, except John A. and Mary Ann Dickison, to whom the testator had by the ninth clause of the will given their full share in his estate, as we have before stated.

To hold otherwise would, it seems to us, be doing violence to the language used, and the manifest intention of the testator as well, and we think could only be arrived at by adopting an unnatural and artificial rule of construction.

We think the views herein above expressed are in full accord with the rulings of the court of last resort in this State, and are fully supported by the late case of Elliott v. Elliott, determined by the Supreme Court of Indiana, in an opinion filed February 19, 1889, reported in 20 N. E. Rep. 264.

Finding no error in the order or proceeding of the Circuit Court, that order and judgment is affirmed.

*Order and judgment affirmed.*